**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abran Saldate,<br><br>    Plaintiff,<br>vs.<br><br>Apple Incorporated, et al.,<br><br>    Defendants. | No. CV-24-02796-PHX-SPL<br><br>**ORDER** |

  Before the Court is Defendant Apple Incorporated's Motion to Dismiss (Doc. 18), Plaintiff Abran Saldate's Response (Doc. 23), and Defendant's Reply (Doc. 25). Also before the Court is Defendant Apple Incorporated's Motion to Stay (Doc. 26), Plaintiff's Response (Doc. 28), and Defendant's Reply (Doc. 31). The Court now rules as follows.

**I. BACKGROUND**

  On November 14, 2023, Plaintiff Abran Saldate made a rent payment to his landlord totaling $3,200.00 via Apple Pay. (Doc. 1 at 4). His landlord did not have Apple Pay, so Plaintiff canceled the payment. (*Id.*). Approximately two days later, Plaintiff contacted his bank, Defendant United Services Automobile Association ("USAA"), to inquire about the status of his canceled payment and was informed that a refund would take approximately three to five days. (*Id.*). On November 20, 2024, Plaintiff had not received his refund, and he contacted Defendant Apple Incorporated ("Defendant" or "Defendant Apple") to inquire about its status. (*Id.*). Defendant Apple informed Plaintiff that a refund could take up to 10 days. (*Id.*). Plaintiff had still not received a refund by the close of the 10-day

period. (*Id.*). Plaintiff contacted Defendant USAA again, who had no record of initiating a refund from Defendant Apple. (Doc. 1 at 4). Plaintiff then opened a dispute with Defendant USAA. (*Id.*).

After a few days, Plaintiff again contacted Defendant Apple, who told him they would contact him in 48 hours and assigned him a case number. (*Id.* at 5). Defendant Apple did not contact Plaintiff, and Plaintiff ultimately called Defendant Apple a few days later, when they again told him they would call him within 48 hours. (*Id.*). This occurred a few times until Defendant Apple eventually informed Plaintiff that it had issued the refund and completed their obligations. (*Id.*). Plaintiff alleges that Defendant Apple "would not confirm what account it sent the money to, nor any documentation regarding this refund to Plaintiff." (*Id.*). Throughout his attempts to contact Defendant Apple, Plaintiff also contacted Defendant USAA, who as of the date of filing this case, has not resolved Plaintiff's dispute. (Doc. 1 at 5).

On October 16, 2024, Plaintiff filed this suit against Defendant USAA, Defendant Apple, Defendant Green Dot Corporation, and Defendant Green Dot Bank. (Doc. 1). Plaintiff alleges that Defendant Apple's Apple Pay platform is the "designated conduit" for Defendant Green Dot Corporation's payment services. (*Id.* at 3). While consumers use the Apple Pay platform to transfer funds, Defendant Green Dot Corporation "is the actual holder of the money as a FDIC bank." (*Id.*). Plaintiff alleges that Defendants have violated the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693, et seq., by failing to timely provisionally credit Plaintiff's account, complete a proper investigation, or return Plaintiff's money with interest. (*Id.*).

On December 11, 2024, Defendant Apple filed the present Motion to Dismiss. (Doc. 18). Defendant Apple subsequently filed a Motion to Stay on January 28, 2024. (Doc. 26). On January 31, 2025, the Court issued an order granting Defendant Green Dot Bank's Motion to Stay pursuant to the Federal Arbitration Act in light of Plaintiff and Defendant Green Dot's Bank's mandatory arbitration agreement. (Doc. 27). The Court declined to rule on Defendant Apple's Motion to Stay until it was fully briefed. (*Id.* at 2).

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8." *Jones v. Mohave Cnty.*, No. CV 11-8093-PCT-JAT, 2012 WL 79882, at *1 (D. Ariz. Jan. 11, 2012); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 203 (5th Cir. 2016) (Rule 12(b)(6) provides "the one and only method for testing" whether pleading standards set by Rule 8 and 9 have been met); *Hefferman v. Bass*, 467 F.3d 596, 599–600 (7th Cir. 2006) (Rule 12(b)(6) "does not stand alone," but implicates Rules 8 and 9). Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *In re Sorrento Therapeutics, Inc. Secs. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024) (citation omitted). A claim is facially plausible when it contains "factual content that allows the court to draw the reasonable inference" that the moving party is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations in the complaint should be assumed true, and a court should then "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. Facts should be viewed "in the light most favorable to the non-moving party." *Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1019 (9th Cir. 2013). "Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation." *Jones*, 2012 WL 79882, at *1 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## III. DISCUSSION

Defendant argues that dismissal is warranted under LRCiv 7.2(i) because Plaintiff's Response to Defendant's Motion to Dismiss was untimely. (Doc. 18 at 2). Alternatively, Defendant argues that dismissal is warranted because Plaintiff fails to allege (1) that Defendant is a financial institution under EFTA; and (2) that the transaction was a qualifying error under EFTA. (*Id.* at 3–4).

The failure of Plaintiff to timely respond to the Motion to Dismiss may in the

discretion of the Court be deemed as consent to the granting of that Motion without further notice, and judgment may be entered dismissing the complaint with prejudice pursuant to LRCiv 7.2(i). *See Brydges v. Lewis*, 18 F.3d 651 (9th Cir. 1994) (per curiam). Moreover, as discussed below, even if the Court exercised its discretion to consider Plaintiff's Response, despite its untimeliness, the Court finds that Plaintiff's Complaint still fails to state a claim upon which relief may be granted against Defendant Apple. Thus, the Court will dismiss Plaintiff's claims against Defendant Apple.

### i. Financial Institution

While one of Plaintiff's claims specifically targets Defendants Green Dot Corporation and USAA, Plaintiff alleges against all Defendants, including Defendant Apple, violations of 15 U.S.C. § 1693f(a)(3) and (b). (Doc. 1 at 6). Under 15 U.S.C. § 1693f(a), when a consumer submits a notification to a financial institution of an error under the statute, the institution is required to investigate the alleged error, determine whether it occurred, and report or mail the investigation results and determination to the consumer within 10 business days. Under 15 U.S.C. § 1693f(b), "[i]f the financial institution determines that an error did occur, it shall promptly, but in no event more than one business day after such determination, correct the error . . . including the crediting of interest where applicable."

EFTA defines a "financial institution" as "a State or National bank, a State or Federal savings and loan association, a mutual savings bank, a State or Federal credit union, or any other person who, directly or indirectly, holds an account belonging to a consumer." 15 U.S.C. § 1693a(9). EFTA's implementing regulation ("Regulation E") further defines a financial institution as a "bank, savings association, credit union, or any other person that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services[.]" 12 C.F.R. § 1005.2(i). That regulation provides that an access device is "a card, code, or other means of access to a consumer's account, or any combination thereof, that may be used by the consumer to initiate electronic fund transfers." 12 C.F.R. § 1005.2(a)(1). Regulation E

further explains that examples of access devices include "debit cards, personal identification numbers (PINs), telephone transfer and telephone bill payment codes, and other means that may be used by a consumer to initiate an electronic fund transfer (EFT) to or from a consumer account." 12 C.F.R. § 1005, Supp. I ¶ 2(a)(1).

Plaintiff's Complaint alleges that "Defendant Green Dot Corporation and Defendant USAA are a 'financial institution' as defined by 15 U.S.C. § 1693a(9)" but does not otherwise allege that Defendant Apple is a financial institution. (Doc. 1 at 3). However, in his Response, Plaintiff argues that Defendant Apple qualifies as a financial institution because it issues access devices and enters agreements with consumers to provide electronic fund transfer services. (Doc. 23 at 6–7). Plaintiff asserts, without providing legal authority, that an access device means a mobile phone number and email address. (*Id.* at 5).

At the motion to dismiss stage, the Court is limited to considering the facts of the operative complaint, and new facts and allegations in a response to a motion to dismiss are not properly before the Court. *See Kruska v. Perverted Justice Found. Inc*., CV 08-0054-PHX-SMM, 2008 WL 5235373, at *4 n.4 (D. Ariz. Dec. 16, 2008) (factual allegations asserted for the first time in a response to a motion to dismiss are not appropriate for consideration at the motion to dismiss stage). Because Plaintiff failed to allege Defendant Apple is a financial institution under EFTA in his Complaint or any underlying facts supporting such an allegation, Plaintiff has failed to state a claim upon which relief may be granted, and dismissal is warranted. To that end, the Court is skeptical that Plaintiff would be able to remedy the allegations upon leave to amend. Other district courts in the Ninth Circuit have expressed skepticism and declined to find that similar entities that serve as conduits or intermediaries in facilitating payments qualify as "financial institutions" under EFTA. *See Tristan v. Bank of Am.*, SACV2201183DOCADS, 2023 WL 4417271, at *11 (C.D. Cal. June 28, 2023) (finding plaintiff did not sufficiently allege that Zelle, a payment platform that facilitates peer-to-peer instant payment services, was a financial institution where Zelle held no consumer accounts nor issued access devices); *Zepeda v. PayPal, Inc*.,

C 10-1668 SBA, 2017 WL 1113293, at *11 (N.D. Cal. Mar. 24, 2017) (finding plaintiff did not establish that Paypal, a payment processing service, was a financial institution under EFTA).

Plaintiff argues in his Response that because he had to provide his Apple ID and password to access Apple Pay, Defendant Apple issued an "access device" and thus qualifies as a financial institution. (Doc. 23 at 5–6). Plaintiff further argues in his Response—again for the first time—that because Defendant issued an "access device," Defendant is alternatively liable as a service provider under 12 C.F.R. § 1005.14(a). (*Id.* at 8). Under 12 C.F.R. § 1005.14(a), an entity that provides electronic fund transfer services to consumers but does not hold consumer accounts may be liable as a service provider if it: "(1) [i]ssues a debit card (or other access device) that the consumer can use to access the consumer's account held by a financial institution; and (2) [h]as no agreement with the account-holding institution regarding such access." But Plaintiff does not assert that Plaintiff's Apple ID log in provides access to the account from which the consumer's funds are transferred, i.e. the account of the financial institution, such as a PIN number or debit card, and thus the Court is unconvinced that Defendant Apple issues access devices as defined by EFTA. All told, the Court finds that Plaintiff has not alleged facts giving rise to a plausible inference that Defendant Apple is a financial institution or a service provider under EFTA. Plaintiff's claim against Defendant Apple must be dismissed.

### ii. Qualifying Error

Additionally, the Court finds that Plaintiff has not sufficiently alleged that Defendant Apple committed a "qualifying error" under 15 U.S.C. § 1693f. Pursuant to § 1693f(f), a qualifying error consists of

> (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included; (4) a computational error by the financial institution; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this

> subchapter; or (7) any other error described in regulations of the Bureau.

EFTA's implementing regulation further defines an error as:

> (i) [a]n unauthorized electronic fund transfer; (ii) [a]n incorrect electronic fund transfer to or from the consumer's account; (iii) [t]he omission of an electronic fund transfer from a periodic statement; (iv) [a] computational or bookkeeping error made by the financial institution relating to an electronic fund transfer; (v) [t]he consumer's receipt of an incorrect amount of money from an electronic terminal; (vi) [a]n electronic fund transfer not identified in accordance with § 1005.9 or § 1005.10(a); or (vii) [t]he consumer's request for documentation required by § 1005.9 or § 1005.10(a) or for additional information or clarification concerning an electronic fund transfer, including a request the consumer makes to determine whether an error exists under paragraphs (a)(1)(i) through (vi) of this section.

12 C.F.R. § 1005.11(a). Plaintiff's Complaint fails to assert which of these errors Defendant Apple allegedly committed, which warrants dismissal. *See Yip v. Bank of Am., N.A.*, 2:21-CV-01254-ART-EJY, 2024 WL 3742910, at *6 (D. Nev. Aug. 9, 2024) (dismissing plaintiffs who failed to allege a qualifying error). Plaintiff's Response argues that "[c]learly, Plaintiff has adequately pled a qualifying error" pursuant to § 1693f(f)(1), (2), and (6). (Doc. 23 at 9). Even if the allegations in Plaintiff's Response were properly before the Court, the Court is unpersuaded.

First, under EFTA, an "unauthorized electronic fund transfer" is defined as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit." 15 U.S.C. § 1693a(12). As Plaintiff alleges that he intentionally attempted to initiate a transfer to his landlord, Plaintiff cannot claim that an unauthorized transfer occurred under § 1693f(f)(1).

Second, while EFTA does not define "incorrect," other district courts in the Ninth Circuit have concluded—and this Court agrees—that "regulatory guidance from the CFPB strongly suggests that 'incorrect' refers to transfers sent in an 'incorrect' amount or to an 'incorrect' recipient." *Sanchez v. Navy Fed. Credit Union*, EDCV23285JGBKKX, 2023 WL 6370235, at *23 (C.D. Cal. Aug. 14, 2023) (citing Consumer Fin. Prot. Bureau,

Supervisory Highlights, Issue 25, Fall 2021, available at https://files.consumerfinance.gov/f/documents/cfpb_supervisory-highlights_issue-25_2021-12.pdf); *Tristan*, 2023 WL 4417271, at *10 (finding a transaction was not "incorrect" where the amount and recipient of the transfer were authorized by the plaintiff). Here, Plaintiff does not assert that $3,200.00 was the incorrect amount, that the intended recipient was incorrect, or that the transaction was not effectuated at the correct time. *Sanchez*, 2023 WL 6370235, at *23. As such, Plaintiff has not stated a claim for a qualifying error under § 1693f(f)(2).

Lastly, in order to allege an error based on requests for documentation required under 12 C.F.R. § 1005.9 or § 1005.10 or requests for additional information or clarification concerning an electronic fund transfer, including requests to determine whether an error exists, a plaintiff must allege that they requested information, and that the financial institution did not provide the requested information. *Yip v. Bank of Am., N.A.*, 2024 WL 3742910, at *9. Transmitting requested information, clarification, or documentation as described in § 1005.11(a)(1)(vii) is part of a financial institution's duty to investigate, correct, and report its determination regarding an error. *See* 12 C.F.R. § Pt. 1005, Supp. I. (Official Interpretation of § 1005.11(c)). Here, Plaintiff's Complaint fails to specify what information it requested and was denied under 12 C.F.R. § 1005.11(a)(vii). Plaintiff's Response argues that Defendant Apple failed to provide documentation or information regarding the refund (Doc. 23 at 9), but as Defendant's Reply notes (Doc. 25 at 4), it is unclear whether the refund is subject to the same reporting requirements as the underlying transfer, and Plaintiff offers no authority or argument that it is. As such, even if Plaintiff had sufficiently alleged that Defendant Apple is liable as a financial institution or service provider under EFTA, dismissal is warranted due to Plaintiff's failure to allege a qualifying error, as well.

**IV.   CONCLUSION**

All told, "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense." *Iqbal*, 556 U.S. at 679. A district court should normally grant leave to amend unless it determines that the pleading could not possibly be cured by allegations of other facts. *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990).

While Plaintiff only needs to allege enough facts to "plausibly give rise to an entitlement to relief," that has not occurred here. *Iqbal*, 556 U.S. at 679. Therefore, the Complaint fails to satisfy the pleading standards set forth by Rule 8 and 12(b)(6), and its dismissal is both warranted and necessary. Moreover, the Court is skeptical that Plaintiff can allege additional facts consistent with the allegations in his Complaint that would sufficiently remedy his claim against Defendant Apple, especially in light of the claim's multiple deficiencies. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend."); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("If a complaint is dismissed for failure to state a claim, leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."). However, if Plaintiff believes he can provide supplemental allegations that would state a claim upon which relief may be granted, Plaintiff may move for leave to amend in accordance with LRCiv 15.1(a) no later than May 1, 2025. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (reiterating the Ninth Circuit's "longstanding rule that leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect") (quotations and citations omitted).

Additionally, the Court will dismiss Defendant's Motion to Stay (Doc. 26) as moot and without prejudice. Should Plaintiff be granted leave to file an amended complaint and Defendant Apple still wish to request a stay of this action, Defendant may refile its Motion to Stay at that time.

Accordingly,

///

///

**IT IS ORDERED** that Defendant Apple Incorporated's Motion to Dismiss (Doc. 18) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff may file a Motion for Leave to Amend by **May 2, 2025** with respect to its claims against Defendant Apple.

**IT IS FURTHER ORDERED** that Defendant Apple Incorporated's Motion to Stay (Doc. 26) is **denied as moot and without prejudice**.

Dated this 11th day of April, 2025.

Honorable Steven P. Logan
United States District Judge